[No. 30358. Department One. April 8, 1948.]

ALICE NIELSEN, *Appellant*, v. BRUCE NIELSEN, *Respondent*.[1]

*Allen & Carey* and *Ward W. Roney*, for appellant.

*Robert B. Porterfield*, for respondent.

SIMPSON, J.—This is a divorce action in which the court granted a decree to both parties, and then awarded the custody of their five-year-old child to defendant's father and mother for a period of one year. After the court had rendered its decision, plaintiff presented a motion to vacate the order as to the custody of the child, or, in the alternative, for a new trial. The court denied the motion, and plaintiff appealed.

The assignments of error challenge the action of the trial court in refusing to give to appellant the custody of her daughter.

[1] Reported in 191 P. (2d) 713.

Appellant and respondent were married in Nome, Alaska, October 12, 1940. To this union there was born a girl, who, at the time of the trial, was of the age of five years. Various acts of misconduct, not necessary to relate, were charged against respondent.

Appellant was, at one time prior to the trial, a patient at the Firlands tuberculosis sanitarium, from which she was discharged in January, 1945. The disease was not active, and at no time were tuberculosis bacilli found in her sputum. At the time she came from the hospital, the doctor advised that she have her daughter with her. Respondent would not agree, so the child stayed with respondent's father and mother.

At the time of the trial, appellant was apparently in good health. This information was given in court by Dr. John E. Nelson, resident physician at the sanitarium. He explained that appellant had an arrested case of tuberculosis which was considered as healed. The doctor testified further that appellant was capable of working, and that there was no danger to the child if she lived with her mother. He was of the opinion that it would be of aid to appellant if she could have her daughter awarded to her. Several witnesses testified that appellant was "a good mother," a "wonderful mother," and, "an ideal mother."

The court in its order awarded the legal custody to both parties. He awarded the physical custody to Jens Nielsen and wife "for one year, and thereafter, until change in such arrangement is made by order of the court upon hearing to be held in June, 1948." The court's reasoning is contained in his oral decision made at the close of the trial, a portion of which we quote:

"Now, Mrs. Nielsen is in this present position. She hasn't been well, and she has been nervous also. She has come out from Alaska, and she is now confronted with the problem of making a living in a rather alien sort of. land. She has no present occupation, and she hopes to develop one. She is the natural physical custodian of this little girl, but I don't think she is at this moment equipped to undertake it, particularly as she has to develop an ability to make her own living."

War bonds, the maturity value of which was seventy-nine hundred dollars, were given into the custody of the National Bank of Commerce as guardian of the minor child, with authority to use that fund for her welfare.

The interlocutory order was entered June 3, 1947. June 5, 1947, appellant filed the motion to vacate or modify the order, or, in the alternative, for a new trial. The reason given for modification was that, subsequent to the decision of the court, appellant had obtained employment from which she would receive one hundred dollars per month, with room and board; that she was self-supporting and was able to have the child with her. The motion was supported by three affidavits—one by her attorney, Charles R. Carey, one by Dr. Dorthie Ness Hopper, and one by appellant. Those affidavits set out the following facts: Dr. Hopper had employed appellant as a domestic in her home at Seattle at a salary of one hundred dollars per month, with room and board. The services to be rendered by appellant consisted of the care and supervision of the doctor's children while she was busy away from her home. Under the terms of employment, it was agreed that if appellant secured the custody of her child, she would be cared for in the doctor's home and associate with the doctor's children. The last paragraph of Dr. Hopper's affidavit is of special interest:

"That the plaintiff [appellant] is highly satisfactory in the care, supervision, custody and control of affiant's children and is imbued with an unusual degree of motherly instinct, care, love and affection and that in this affiant's opinion the plaintiff should have the physical custody of her little child, Alice Margaret."

■ The welfare of children of divorced parents is of paramount importance. *In re Hansen*, 21 Wn. (2d) 695, 152 P. (2d) 712; *Warnecke v. Warnecke*, 28 Wn. (2d) 259, 182 P. (2d) 699.

■ The custody of children of tender years will not be taken from their mother unless it is shown that she is unfit, and an improper person to have their custody and control.

*Mason v. Mason,* 163 Wash. 539, 1 P. (2d) 885; *In re Hansen, supra.*

We are unable to arrive at the same conclusion as did the trial court. As we have just stated, before children of tender years are taken from their mother and given to others, it must be shown that the mother is an unfit and improper person to be intrusted with their custody. This rule is of special application in cases involving girls.

■ Appellant was a good mother. She worked, and saved as much as she could. She was of good moral character, and devoted to principles of decency and proper living. True, she had a case of arrested tuberculosis, and had no home and no income. We have mentioned before, however, that Dr. Nelson testified appellant's physical condition classified her as an arrested case of tuberculosis, which, he explained, is commonly called "healed tuberculosis." He testified that she was able to work. Asked if her child's health would be in any wise endangered if she should be given into the custody of appellant, the doctor answered, "It would not."

From the whole record, including that pertaining to modification of the order, we conclude that the best interests of the child would be served by giving her into the custody of her mother, and commanding her father to contribute a substantial amount of money each month to her care and support.

This case is remanded to the superior court with instructions to enter judgment in conformity with this opinion.

MALLERY, C. J., MILLARD, SCHWELLENBACH, and HILL, JJ., concur.