[No. 34365. Department Two. May 15, 1958.]

GERALDINE LIVERMORE SIEWERT, *Appellant*, v. DELBERT LIVERMORE, *Respondent*.[1]

[1]Reported in 325 P. (2d) 293.

 

*David E. Rhea*, for appellant.

*Kindall & Voris*, for respondent.

ROSELLINI, J.—The parties to this action were married April 2, 1951. They were separated the day that their only child, a daughter, was born, August 21, 1951, and were divorced on August 21, 1953. The appellant was awarded custody of the child, who since her birth had been living alternately with the appellant and with a married relative of the appellant, a Mrs. Knutson, who lives in Bellingham.

The appellant remarried on the day the divorce decree was entered. This marriage was also short lived. On December 20, 1955, she married her present husband, Donald Siewert, a construction electrician, with whom she has since lived continuously. They have a son, born in November, 1956.

During the first five years of the daughter's life, she spent at least half of her time in the home of Mrs. Knutson, where she was much loved and given excellent care.

The respondent remarried on July 20, 1956, and established a home with his wife and three step-children in Bellingham. On January 30, 1957, he petitioned for a modification of the divorce decree, alleging changed circumstances and asking that custody of the child be awarded to him.

After hearing the evidence, the court concluded that, while the appellant had been justified in leaving the child in the home of the Knutson family when her work or ill health required it, she had allowed the child to remain there on many occasions and for considerable periods of time when it was unnecessary, and, consequently, that she had not exhibited the maternal interest and concern which a mother is assumed to possess when it is said that a child

of tender years will not be taken from its mother except for compelling reasons. Considering, also, the facts that the appellant has manifested considerable emotional instability, that her present husband's work requires him to change his residence frequently, and that the present physical home facilities of the appellant are not as adequate as they should be to give proper care to the child, and balancing against these considerations the fact that the respondent and his new family are eager to have the child live with them and offer what promises to be a stable home, the court concluded that the welfare of the child would be best served by placing her in the care of her father.

The appellant assigns error to several findings of fact but makes no argument in support of these assignments. While we are therefore not called upon to review the record, we have nevertheless done so and have determined that the evidence supports the findings.

The court expressly found that both parents were morally fit and proper persons to have the care and custody of the child. The appellant urges that, in view of this finding, the reasons given for depriving her of custody were inadequate. She relies upon the policy frequently enunciated by this court, that the custody of children of tender years should ordinarily be awarded to their mother unless she is so far an unfit and improper person that her custody of them would endanger their welfare, citing *In re Hansen,* 21 Wn. (2d) 695, 152 P. (2d) 712; *Schorno v. Schorno,* 26 Wn. (2d) 11, 172 P. (2d) 474; *Sinnott v. Sinnott,* 27 Wn. (2d) 520, 179 P. (2d) 305; and *Nielsen v. Nielsen,* 30 Wn. (2d) 471, 191 P. (2d) 713. In *In re Hansen, supra,* the principle was applied in reversing an order which placed the custody of young children in a court appointed guardian, where the only showing against the mother was that she had gone to another state to secure work and left the children in a boarding house. We stated in that case:

"It will not be held that any parent may lose the custody of children because financial considerations compel any certain way of living."

*Schorno v. Schorno, supra,* was another case in which the trial court had changed the custody of children because the mother's employment compelled her to leave them temporarily with the father. We held that this fact was insufficient to justify a finding that the welfare of the children required them to remain with the father. The mother in that case had, at all times, exhibited a strong maternal interest in and affection for her children and had placed them with the father only when his refusal to pay her support money had necessitated her going to work.

In *Sinnott v. Sinnott, supra,* a divorce action, we reversed an order of the trial court awarding custody to the father. In that case, the award had been made on the basis of a finding that the mother was unfit; and we held on appeal that the evidence preponderated against this finding.

*Nielsen v. Nielsen, supra,* was another case in which the trial court had based its award of custody on financial considerations only, placing the child in the physical custody of her paternal grandparents; and we held that the determination that this was for the best welfare of the child was erroneous, in view of the undisputed evidence that the appellant was a good mother, of good moral character, industrious and devoted to principles of decency and proper living. The trial court was influenced by the fact that she had a case of arrested tuberculosis and had no home and no income at the time of the divorce. Subsequently, however, she secured a job and a home, and her doctor testified that she was able to work and that her condition would not endanger her child. Consequently, in that case, there were no circumstances which would justify depriving the mother of custody.

While, in cases such as those which we have just discussed, the rule has been stated in unequivocal terms, that the custody of children of tender years will not be taken from their mother unless it is shown that she is unfit and an improper person to have their custody and control; in other cases, it has been modified, and the tendency has been to place in the trial court a wide discretion in custody matters.

See *Hathaway v. Hathaway*, 23 Wn. (2d) 237, 160 P. (2d) 632 (refusing to disturb a decree awarding custody to the father, where it appeared that he had had the four children of the parties with him for a considerable time before the trial, had established them in school, and could keep the family together, whereas the mother lived in a modest home at Long Beach, where she engaged in "various kinds of employment"); *Habich v. Habich*, 44 Wn. (2d) 195, 266 P. (2d) 346 (upholding an award in favor of the father where the children had become happily established in his home, after having been shunted around among the homes of the maternal grandmother, the paternal grandparents, and the mother); *Munroe v. Munroe*, 49 Wn. (2d) 453, 302 P. (2d) 961 (approving a modification of custody whereby three sons of the parties were placed in the home of the father while the two daughters were allowed to remain with the mother, this disposition being made in the hope of alleviating the constant bickering between the parents over the matter of custody, which had created a harmful emotional environment manifestly affecting the welfare of the children); and *Patterson v. Patterson*, 51 Wn. (2d) 162, 316 P. (2d) 902 (upholding a decree placing custody of three minor children with the father, where the evidence showed that the mother was morally unfit and emotionally immature and unstable, although there was no express finding that she was unfit).

As stated in *Hathaway v. Hathaway, supra,* the rule is not inflexible, and there are circumstances when it must yield to the rule that the welfare of the children is the paramount consideration. Each case must depend upon its own facts and circumstances. A wide discretion must be vested in the trial judge because he has had the parties before him; and the trial of the case and development of the facts necessarily have given him a better opportunity to determine what would be best for the children than we can usually gain from the printed record.

If the only considerations which moved the trial court to change the custody of the child involved in these proceedings were the financial status of the mother and the fact that her husband's work required the family to move

frequently, we would be inclined to hold that this determination was unjustified. But it is apparent from a reading of the findings and the memorandum decision that the court was more influenced by the character of the appellant, as revealed on the witness stand, and by the fact that in leaving the child in a foster home when necessity did not demand it, she had failed to provide the maternal care which she could have provided while the opportunity was hers. It is also evident that the court gave considerable weight to the testimony of Mrs. Knutson, whose interest in and affection for the child were unquestioned.

There is much in the record which favors the appellant's viewpoint. There was no assurance that the new environment in which the child was to be placed would be more secure than her previous homes. The respondent's present marriage had been established for less time than the appellant's, and there is the further disadvantage that his wife was employed; and for part of the time during the day the child would be in the care of her fifteen-year-old stepsister. In addition, the evidence of the respondent's interest in his child during the early years of her life is slight indeed. On the other hand, he offered a comfortable home and a stability of physical environment which the appellant could not provide, because of the nature of her husband's employment. And, we cannot disregard the fact that the court had all of the interested parties before it and was in a position not shared by this court to judge the character and sincerity of each. The trial court was reluctant to deprive the mother of custody, but as stated in its memorandum decision, the primary consideration always must be the welfare of the child.

We cannot say, upon the record, that the court was not moved by this consideration alone or that, in awarding the custody for the time being to the father, it abused its discretion.

The order is affirmed.

HILL, C. J., DONWORTH, WEAVER, and FOSTER, JJ., concur.