[No. 42211.   En Banc.   June 15, 1972.]

ELLSWORTH J. BAKER, *Appellant,* v. BETTY JENE BAKER, *Respondent.*

738

*Peter D. Preston* and *Robin Jensen Preston,* for appellant.

*Malcolm L. Edwards, Jack E. Wetherall,* and *William M. Robinson,* for respondent.

HUNTER, J.—This is an appeal from an order of the trial court in a divorce proceeding awarding child support, college expenses and alimony, and making a disposition of the property. Appeal is also being taken from a subsequent order granting additional attorney's fees.

The plaintiff (appellant), Ellsworth J. Baker, and the defendant (respondent), Betty Jene Baker, were married July 9, 1949, in Seattle. One child, a daughter, was born June 1, 1957. She was 13 years old at the time of the divorce. From 1949 to 1964, the plaintiff was employed in various capacities, including that of salesman, real estate salesman and broker, and insurance salesman. Commencing in 1964, the plaintiff returned to college, receiving his Bachelor's Degree in 1968, and his Master's Degree in Business Administration in 1971. The defendant was employed prior to the marriage, and prior to the birth of the child, in the capacities of a retail sales clerk and a rate clerk for an insurance company. She was not employed after the birth of their daughter. Throughout the marriage the parties pur-

chased and remodeled real estate which they would sell for a profit.

In 1963, the plaintiff's mother died and left him her estate valued at approximately $100,000. The inheritance consisted primarily of stocks and some real estate, including an unfinished cabin and waterfront lot on Lake Roesiger valued at $4,950. Since 1964, outside of attending college, the plaintiff was self-employed, supporting his family from the proceeds of the sale and management of his various stock accounts inherited by him from his mother, and from the sale of other real estate pieces. Both parties devoted substantial labor to renovating and improving the cabin and an A-frame cabin and property purchased by the community on Lake Roesiger. At the time of the divorce the Lake Roesiger cabin and waterfront lot was worth $16,500, and the A-frame cabin and property was valued at about $50,000, subject to a mortgage balance of approximately $35,000. Both parties sought a divorce against the other on the grounds of cruel treatment.

The trial court specifically found that the plaintiff desired the divorce in order to marry a family friend; that the plaintiff had abandoned the defendant and the minor child of the parties in order to pursue his female friend; and that the plaintiff drank to excess. In its decree dated April 6, 1971, the trial court granted each of the parties a divorce from the other, awarded custody of the minor child to the defendant, and ordered the plaintiff to pay child support and college expenses as follows:

> [U]ntil such time as she shall reach the age of twenty-one years, becomes self-supporting or married, whichever shall first occur, together with the expenses of said child's college education until she completes college or reaches the age of twenty-one years, whichever shall first occur, but in any event, plaintiff shall pay for four years of college if the minor child desires to attend college: PROVIDED, HOWEVER, in the event that said child's expenses during the period she is attending college exceed the sum of $200 in any month, plaintiff may deduct the $200 per month support payment in said month;

The trial court also ordered the plaintiff to pay $200 per month alimony for a period of 12 months or until the defendant remarried, whichever occurred sooner, and ordered the plaintiff to pay $750 attorney's fees and costs to the defendant. In its oral opinion the trial court determined that the total of the community property of the parties at the time of the divorce was in the amount of $47,700, which included the cabin on Lake Roesiger from the plaintiff's mother's estate, and the value of the separate property of the plaintiff was found to be approximately $68,000.

The trial court divided the property of the parties as follows:

### AWARDED TO THE PLAINTIFF

| | | |
|---|---|---:|
| (a) | A-frame cabin, building lot and second cabin on Lake Roesiger ........................... Net Value | $ 15,000.00 |
| (b) | Household furnishings in the cabin on Lake Roesiger | 1,000.00 |
| (c) | Seller's interest in real estate contract on property in Seattle ........................... Net Value | 5,100.00 |
| (d) | Cabin and waterfront lot on Lake Roesiger (Inherited from mother) .......................... | 16,500.00 |
| (e) | 3 Life insurance policies on plaintiff's life.. Net Value | 91.87 |
| (f)(g) | Savings and checking accounts ................. | 10.00 |
| (h) | Plaintiff's tools .................................. | (Not valued) |
| (i) | Seascouter sailboat and canoe .................... | (Not valued) |
| (j) | 1966 Lincoln ..................................... | 2,000.00 |
| (k) | Carved ivory artifacts ........................... | 750.00 |
| (l) | Stocks ............................... Net Value | 65,000.00 |
| (m)-(o) | Miscellaneous personal effects ............... | (Not valued) |
| | TOTAL | $105,451.87 |

### AWARDED TO THE DEFENDANT

| | | |
|---|---|---:|
| (a) | Miscellaneous household goods and furnishings in storage ................................... Cost | $ 5,000.00 |
| (b) | Television at cabin .............................. | (Not valued) |
| (c) | 1969 Ford Mustang (A gift to the defendant from plaintiff) ..................................... | 2,000.00 |
| (d) | Jewelry and personal effects of defendant.......... | 3,100.00 |
| (e) | Life insurance policy on defendant's life.. Net Value | 16.11 |
| | TOTAL | $ 10,116.11 |

In addition, the defendant was awarded a judgment against the plaintiff in the amount of $50,000, together with interest thereon at the rate of 7 per cent per annum, payable at the rate of $450 or more per month, secured by a lien in said amount on all of the real properties awarded the plaintiff.

By order dated June 30, 1971, the plaintiff was further ordered to pay the defendant additional attorney's fees and costs pending appeal in the amount of $750.

The plaintiff appeals.

The plaintiff first assigns error to the order of the trial court requiring him to pay $200 per month child support until the minor child is 21 years of age, together with 4 years of college expenses. He cites RCW 26.08.110, which gives the court the authority, in divorce actions, to make provisions for the support and education of the *minor* children of the marriage. The plaintiff claims that the age of majority was lowered to 18 years by Laws of 1971, 1st Ex. Ses., ch. 292, § 1, p. 1603 (RCW 26.28.010 as amended), which reads:

> Except as otherwise specifically provided by law, all persons shall be deemed and taken to be of full age for all purposes at the age of eighteen years.

The plaintiff contends that the part of the decree in this case which provided for support and college expenses after the minor child has reached the age of 18 years is invalid. We disagree with this contention, except as to a partial limitation on the college expenses.

■■ It is the rule in this state that a legislative enactment is presumed to apply prospectively only, and will not be held to apply retrospectively unless such legislative intent is clearly expressed or to be implied. *Anderson v. Seattle*, 78 Wn.2d 201, 471 P.2d 87 (1970); *Bodine v. Department of Labor & Indus.*, 29 Wn.2d 879, 190 P.2d 89 (1948); *Lynch v. Department of Labor & Indus.*, 19 Wn.2d 802, 145 P.2d 265 (1944); and cases cited therein. Further, the legislature is without power to set aside, annul, or change the liability upon a judgment affecting solely the rights of private parties by the enactment of a general law. *Keen v. Goodwin*, 28 Wn.2d 332, 182 P.2d 697 (1947); *Springstun v. Springstun*, 131 Wash. 109, 229 P. 14, 40 A.L.R. 595 (1924). The decree of divorce and judgment in this case were entered on April 6, 1971. On that date, the age of majority was 21 years as defined under RCW

26.28.010. Laws of 1971, 1st Ex. Ses., ch. 292, § 1, p. 1603, which amended RCW 26.28.010 and lowered the age of majority to 18 years for purposes applicable to that statute, did not become effective until August 9, 1971, 4 months after the judgment was entered in this case. We find nothing in the new legislation to indicate that it is intended to have retroactive application.

We hold that Laws of 1971, 1st Ex. Ses., ch. 292, § 1, p. 1603, is not retroactive and does not apply to judgments entered in divorce decrees prior to August 9, 1971, the effective date of the enactment. Therefore, it was entirely within the authority of the trial court in this case to make provisions for the support and education of the child of the parties until the child reached the age of 21 years. Whether the legislation lowering the age of majority to 18 years applies, under RCW 26.08.110, to support and education provisions in divorce decrees entered subsequent to August 9, 1971, is not properly before us at this time since the rights of the parties to this action are not affected thereby. We therefore do not decide that question.

The plaintiff contends, however, that in any event the trial court erred in directing that he provide for the child's college expenses beyond the age of 21 years. This is conceded by the defendant. The law is clear that a divorce court is without jurisdiction to direct a parent to provide for support and education after the child attains majority. RCW 26.08.110. *Sutherland v. Sutherland*, 77 Wn.2d 6, 459 P.2d 397 (1969); *Ditmar v. Ditmar*, 48 Wn.2d 373, 293 P.2d 759 (1956); *Van Tinker v. Van Tinker*, 38 Wn.2d 390, 229 P.2d 333 (1951); *Herzog v. Herzog*, 23 Wn.2d 382, 161 P.2d 142 (1945). The decree should therefore be modified to terminate payment of college expenses when the child reaches the age of 21 years.

The plaintiff contends that the amount of $200 per month for child support is excessive. It is well established that an award for child support must be fixed on the basis of all the factors which have a reasonable bearing on the future welfare of the children and the economic circum-

stances of the parents, including the cost of care, maintenance, and education of the children, the resources, earning capacity and economic prospects of the parents, the age and health of the parties, and their standard of living prior to the divorce. *Puckett v. Puckett,* 76 Wn.2d 703, 458 P.2d 556 (1969). *See also: Clark v. Clark,* 72 Wn.2d 487, 433 P.2d 687 (1967); *Garrett v. Garrett,* 67 Wn.2d 646, 409 P.2d 470 (1965). Furthermore, in matters of this nature, this court is most reluctant to substitute its evaluation and judgment for that of the trial judge. *Kelso v. Kelso,* 75 Wn.2d 24, 448 P.2d 499 (1968); *Wages v. Wages,* 39 Wn.2d 74, 234 P.2d 497 (1951). Considering all of these factors, we do not believe that $200 per month child support is an abuse of discretion on the basis of the record before us.

The plaintiff contends that the order of the court requiring him to pay "the expenses of said child's college education" is unlimited in scope, vague in nature, and is an abuse of discretion under the facts of this case. He argues that the order encompasses all expenses of the child and puts an unanswerable lien upon the future earnings of the husband. We disagree.

The trial court could very well have had in mind that there was little basis on which to determine an exact amount for costs of a college education 7 years hence. The trial court's failure to provide an accurate monetary figure for the future costs of a college education for a minor child, however, is not fatal to the award. In the absence of a specific amount under these circumstances, those costs and expenses which are reasonably necessary to accomplish the purposes and direction of the decree would necessarily be implied. It is further implicit in the order that the amount would be limited to those expenses which are reasonably necessary to provide for the college education of the child at the time she is qualified and attends college. We hold therefore that the decree is not unconstitutionally vague and is not an abuse of the trial court's discretion.

The plaintiff contends that the trial court erred in awarding $200 per month alimony for 12 months to the defend-

ant, for the reason that there was no showing of need by the defendant; and the plaintiff assigns error to the finding of the court that at the present time the defendant is capable of only housework. We disagree that the trial court erred in making this award and finding.

The general rule in this state is that alimony is not awarded as a matter of right. Whether or not it should be awarded depends upon the necessities of the wife and the financial ability of the husband to pay. The facts of the case are therefore the determinants. *Kelso v. Kelso, supra; Holloway v. Holloway,* 69 Wn.2d 243, 417 P.2d 961 (1966), and cases cited therein. The courts should, when awarding alimony at the divorce of a long marriage, consider and weigh the future earning capabilities of both parties and allow the wife such sums for whatever period of time seems right under all the circumstances. *Stacy v. Stacy,* 68 Wn.2d 573, 414 P.2d 791 (1966); *Underwood v. Underwood,* 162 Wash. 204, 298 P. 318 (1931). In the instant case the record shows that the defendant has no secretarial experience and does not type or take shorthand. Her educational background and employment experience do not qualify her for any particular type of work, except possibly that of retail sales clerk or rate clerk. She testified, however, that she is now capable of only doing housework. The fact that the defendant has not been employed outside the marriage for the last 14 years of the 21 years of marriage, corroborates this testimony. On the basis of the record, we believe that the trial court was justified in finding that the defendant was presently qualified only for housework.

The defendant testified, however, that it was her intention to undertake a practical nursing course which would require about 1 year. The plaintiff, on the other hand, has obtained his Master's Degree in Business Administration, enabling him to immediately seek gainful employment, and he was awarded substantially all of the assets of the parties, leaving the defendant with no immediate source of income for support and costs of training, except the lien payment of $450 per month. It is clear that the defendant

has a financial need for additional support until such time as she can become trained for future employment, and that the plaintiff has the ability to provide that support. The court was cognizant of the necessity for the defendant to contribute to her own support by its limitation of the award of alimony to a period of 12 months or until such earlier time as she shall marry. We believe that the facts of this case support the award of alimony for the amount and period set by the trial court.

The plaintiff contends the trial court erred in holding that the cabin and waterfront lot on Lake Roesiger inherited by the plaintiff from his mother was community property. The plaintiff is correct.

The rule is well settled in this state that the character of property as community or separate is to be determined as of the date of its acquisition and that, if it is separate property at that time, it will remain separate property through all of its changes and transitions as long as it can be traced and identified, and its rents, issues and profits likewise are and continue to be separate property. *See Burch v. Rice,* 37 Wn.2d 185, 222 P.2d 847 (1950); *In re Estate of Witte,* 21 Wn.2d 112, 150 P.2d 595 (1944), and cases cited therein. Since the property in question was inherited by the plaintiff from his mother, it was his separate property when acquired and it remained separate property. The community, however, made substantial improvements to the property and its value at the time of the divorce had increased from $4,950 to $16,500, resulting from the community effort. The community therefore had a lien on this property to the extent of this enhanced value. *Burch v. Rice, supra.* The court, in a divorce action, must have in mind the correct character and status of the property as community or separate before any theory of division is ordered. *Blood v. Blood,* 69 Wn.2d 680, 419 P.2d 1006 (1966); *Shaffer v. Shaffer,* 43 Wn.2d 629, 262 P.2d 763 (1953). Characterization of the property, however, is not necessarily controlling; the ultimate question being whether the final division of the property is fair, just and

equitable under all the circumstances. *Worthington v. Worthington*, 73 Wn.2d 759, 440 P.2d 478 (1968), and cases cited therein. The record shows that the trial court also erroneously characterized as community property the 1969 Ford Mustang, which was a gift from the plaintiff to the defendant, and also the defendant's jewelry and personal effects. The errors therefore were not prejudicial as one error in effect neutralizes the other, since the separate property of the respective parties so erroneously characterized as community property was approximately of the same value.

The plaintiff contends that the property division was not fair and equitable, since the defendant received more property than the plaintiff, including a portion of his separate property in addition to all of the community property, and there was no evidence to support the award to the defendant of the plaintiff's separate property in addition to the total value of the community property.

RCW 26.08.110 directs that a divorce decree shall make such disposition of the property of the parties, either community or separate, as shall appear just and equitable. We have discussed many times the factors which are to be considered by the court in making a just and equitable disposition of property. They are the merits of the parties; the condition in which they will be left by the divorce; the burdens imposed by child custody; the necessities of the wife and the financial ability of the husband; the age, health, education and employment history of the parties; the future earning prospect of the parties; the sources through which the property was acquired by the parties during the marriage and what properties each brought into or contributed to the community property; and the kinds of property left to be divided at the divorce. *See DeRuwe v. DeRuwe*, 72 Wn.2d 404, 433 P.2d 209 (1967); *Stacy v. Stacy, supra; Browning v. Browning*, 46 Wn.2d 538, 283 P.2d 125 (1955); *Merkel v. Merkel*, 39 Wn.2d 102, 234 P.2d 857 (1951). Under RCW 26.08.110, the separate, as well as the community property of the parties to a divorce is sub-

ject to fair, reasonable, and equitable disposition by the court. *Morris v. Morris,* 69 Wn.2d 506, 419 P.2d 129 (1966); *Dickison v. Dickison,* 65 Wn.2d 585, 399 P.2d 5 (1965). Further, we have consistently held that the trial court is given a wide discretion in making the property division in a divorce action and that this court will not interfere except for a manifest abuse of such discretion. *Mayo v. Mayo,* 75 Wn.2d 36, 448 P.2d 926 (1968); *Lucker v. Lucker,* 71 Wn.2d 165, 426 P.2d 981 (1967); *Weaver v. Weaver,* 70 Wn.2d 559, 424 P.2d 637 (1967), and cases cited therein.

In this case the record shows that substantially all of the assets, both community and separate, were awarded to the plaintiff, presumably to enable him to carry on the operation of his business in the trading of the securities which he inherited. In addition, during the marriage of the parties, the plaintiff had acquired a college education and his Master's Degree, which would qualify him for a yearly income of approximately $9,000, according to the testimony. The defendant, on the other hand, was awarded none of the assets, except the furniture, the Mustang automobile, jewelry and a life insurance policy. She had only 1½ years of college education, majoring in art, and no employment experience except for the period of time as a retail sales lady and rate clerk prior to the birth of her daughter in 1957. Having all these considerations in mind, we cannot say that it was unreasonable for the court to award to the defendant, in lieu of assets, a judgment of $50,000 with interest at 7 per cent, which was secured by a lien against the real property awarded the plaintiff and which was payable at the rate of $450 per month. The value to the defendant of such a judgment lien is vastly different than an award of cash or other assets, particularly where the $50,000 judgment is secured only by one parcel of real property valued at $16,500, and a second parcel valued at $50,000 subject to a mortgage balance of approximately $35,000. Considering the entire record, we cannot say that there was a manifest abuse of discretion by the trial court in its disposition of the property in this case.

■ The plaintiff further argues, however, that the division of the property was prejudicial in that it constituted an imposition of a penalty against the plaintiff for his fault in the precipitation of the divorce. He cites the rule in *Myers v. Myers,* 21 Wn.2d 19, 23, 149 P.2d 926 (1944), wherein we held:

> The fact that one of the parties may have been in serious fault does not justify the imposition of a severe penalty in the way of deprivation of property. The matter of fault is a proper one for inquiry when making a division of property, but this of itself does not require that a larger portion of the property be awarded to the one not in fault than is given to the other.

*See also Bryant v. Bryant,* 68 Wn.2d 97, 411 P.2d 428 (1966), wherein we adhered to this rule. Our review of the record indicates that the trial court did consider the fault of the plaintiff in its division of the property; however, we are satisfied that this was only one of the factors weighed along with the other evidence in the case, and did not constitute a penalty against the plaintiff amounting to a deprivation of property.

Lastly, the plaintiff contends that the trial court erred in awarding additional attorney's fees in the amount of $750 pending the appeal. He claims there was no evidence showing that the defendant was in need of additional attorney's fees and that this is a matter which should properly have been left to the appellate court. We disagree.

■ The rule is clear that the allowance of attorney's fees on appeal from a divorce proceeding is a matter well within the discretion of the trial court. *Christopher v. Christopher,* 62 Wn.2d 82, 381 P.2d 115 (1963); *Morgan v. Morgan,* 59 Wn.2d 639, 369 P.2d 516 (1962); *Malfait v. Malfait,* 54 Wn.2d 413, 341 P.2d 154 (1959); *Kain v. Kain,* 51 Wn.2d 387, 318 P.2d 955 (1957); *State ex rel. Atkinson v. Church,* 37 Wn.2d 814, 226 P.2d 861 (1951). In exercising its discretion in the allowance of attorney's fees and costs, the trial court must base its decision upon the need of the one requesting them and the ability of the other to pay.

*McNair v. McNair,* 64 Wn.2d 283, 391 P.2d 549 (1964); *Ovens v. Ovens,* 61 Wn.2d 6, 376 P.2d 839 (1962). Where, as here, all of the income producing property of the community and practically all of the parties' liquid assets are controlled by the former husband, the defendant is entitled to an award of attorney's fees on appeal.

The decree is modified to terminate payment of college expenses when the child reaches the age of 21; the judgment in all other aspects is affirmed.

HAMILTON, C.J., FINLEY, ROSELLINI, HALE, NEILL, STAF-FORD, WRIGHT, and UTTER, JJ., concur.