**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 80352-2-I |
| | ) | |
| BARRY ARONSON, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| and | ) | |
| | ) | |
| JENNIFER ARONSON, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |

MANN, C.J. — Jennifer Cross (f.k.a. Jennifer Aronson) appeals the trial court's characterization of stock awards and an award of attorney fees following remand from this court. She argues that the trial court erred when it characterized the stock awards and abused its discretion in its calculation of attorney fees. We disagree, and affirm.

I.

Jennifer Cross and Barry Aronson separated in 2014.[1] The trial court entered the decree of dissolution on June 30, 2016. The court initially awarded Aronson his checking account, which held $3,097, his car, inheritance, personal property, airline

---

[1] The facts leading up to this court's previous remand are taken from our unpublished decision, In re Marriage of Aronson No. 75734-2-I, (Wash. Ct. App. Sept. 4, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/757342.PDF

Citations and pin cites are based on the Westlaw online version of the cited material.

miles, and any future Microsoft stock awards. The remaining community and separate property was awarded to Cross. The court also awarded child support and spousal maintenance to Cross. The court ordered Aronson to pay Cross attorney fees out of his Microsoft stock awards that had been awarded but not yet vested.

Cross then moved for reconsideration, which the trial court granted in part, increasing Cross's maintenance, decreasing child support, and ordering Aronson to split all future stock awards with Cross. Cross appealed and Aronson cross-appealed.

This court held that the trial court incorrectly characterized Aronson's Microsoft stock awards as his own separate property. Three unvested awards of stock were at issue:

> (1) an "On Hire" award of 1,878 shares on April 21, 2014, of which 1,127 shares remained unvested, (2) a "FY 14 Annual SA" award of 991 shares on August 29, 2014, of which 694 shares remained unvested, and (3) a "FY15 Annual SA" award of 2,069 shares on August 31, 2015, of which 1863 shares remained unvested. A percentage of shares vest each year at the end of August.[2]

Aronson needed to remain employed at Microsoft for the shares to vest. We explained that when the trial court awarded Cross attorney fees to be paid with Aronson's unvested shares, it had failed to conduct the proper Short analysis to determine which shares were considered separate property. In re Marriage of Short, 125 Wn.2d 865, 872, 890 P.2d 12 (1995). We remanded for the trial court to properly recharacterize the shares as community or separate property, and then use its discretion to distribute the unvested shares in a fair, just, and equitable manner. We also remanded for the trial

---

[2] Aronson, No. 75734-2-I, slip op. at 4.

court to enter a judgment against Aronson for Cross's attorney fees. We affirmed the trial court in all other aspects.[3]

On remand, the trial court determined that the "On Hire," April 20, 2014, Award was a hiring bonus designed to induce Aronson to accept a job with Microsoft. "Thus, this award is community property since it is for employment services prior to hire in 2014 and for Aronson's first work for Microsoft, performed during the marriage."

The trial court next determined that the "Fiscal Year 14 Stock Award" awarded on August 29, 2014, was earned through Aronson's continued employment and future productivity at Microsoft. The award has no value when it is issued, and it only vests at six-month intervals in the future, and it is only payable if Aronson is still employed by Microsoft on the vesting dates. The court found that the Fiscal Year 14 Stock Award was part community and part separate property, as the parties separated in the middle of the time period of when the stock vested.

The trial court next determined that the "Fiscal Year 15 Stock Award" awarded on August 31, 2015, was also granted for work performed in the future to ensure Aronson's continued employment and future productivity. The court found that because the award was made after the separation, and all the shares vested after the separation, the Fiscal Year 15 stock award was Aronson's separate property. Since Aronson was laid off in 2017, none of the stock awards which vested after spring of 2018 were received by Aronson or the community.

---

[3] Aronson, No. 75734-2-I, slip op. at 8, 12.

The trial court applied the <u>Short</u> "time rule," which applies to the first stock option to vest after the parties are found to be "living separate and apart." <u>Short</u>, 125 Wn.2d at 874. Under the recharacterization:

> The first set of stock shares to vest from the Fiscal Year 14 Stock Award (99 shares on March 2, 2015) is characterized under the time rule according to the character of the employment efforts over the vesting period. The parties separated on December 11, 2014, so work performed before that date is community and work performed after that date is Mr. Aronson's separate property. The March 2, 2015 set of stock shares was earned from the grant (August 29, 2014) to the vesting date (March 2, 2015). So approximately 58% of the effort made to earn the March 2, 2015 stock shares was community and about 42% was separate.

Originally, the trial court awarded Cross attorney fees from Aronson's stock that would vest in the future, which this court rejected on appeal. Aronson had since been laid off from Microsoft, through no fault of his own, which resulted in losing much of the value of the unvested stock. Because of this, the trial court said it would "quantify the attorneys' fee award, credit Aronson with the amount of the award which was satisfied by the transfer of stock awards to Cross and enter a judgment for the remainder." The court determined:

> The amount of fees award[ed] by the court to Ms. Cross in 2016 was the then value of one half of the unvested stock awards ($93,223.50), less the amount withheld by Microsoft for taxes, paid out over the ensuing four years as the stock awards vested. Of the $93,223.50 which the court awarded to Cross for attorneys' fees, she received $39,810.87 from stock awards which vested through the Spring of 2018. Thus, the outstanding attorneys' fee award to her is $53,412.83, less the amount Microsoft would have withheld for taxes had it been received as a stock award. Microsoft deducts approximately 32.65% from each stock award as it vests for taxes . . . 32.65% of 53,412.83 is $17,439.29. Thus Cross is entitled to an additional $35,973.54 for the award for attorneys' fees.

The court also rejected Cross's request for a prejudgment award of interest, as the original award contemplated payment of the attorney fees as the stock vested. The

court also awarded Cross $4,813.46 in attorney fees for her motion on remand.  Cross moved for reconsideration, challenging the court's characterization of the 2014 and 2015 stock awards, the court's decision not to consider account monies already awarded to her, and the court's decision to deduct taxes from the amount owed.  The court denied her motion.  Cross appeals.

## II.

Cross argues that the trial court erred when it recharacterized the unvested stock options and redistributed them for her award of attorney fees.

## A.

We review the trial court's characterization of property as separate or community de novo.  In re Marriage of Mueller, 140 Wn. App. 498, 503, 167 P.3d 568 (2007).  Washington presumes that assets acquired during marriage are community property.  Short, 125 Wn.2d at 870.  "When spouses or domestic partners are living separate and apart, their respective earnings and accumulations shall be the separate property of each."  RCW 26.16.140.  The characterization of the property is not controlling, as the ultimate question is whether the final division of property is fair, just, and equitable under the circumstances.  Baker v. Baker, 80 Wn.2d 736, 745-46, 498 P.2d 315 (1972).

The characterization of employee stock options as separate or community property depends on when the options were acquired.  Short, 125 Wn.2d at 871.  A vested employee stock option is acquired when granted, but to determine when an unvested employee stock option is acquired requires the court to apply the "time rule."  Short, 125 Wn.2d at 871.  The time rule "is a formula for allocating stock options

according to the employment services performed prior to and after the date the parties were living separate and apart." Short, 125 Wn.2d at 872.

In order to characterize unvested awards, the court must first ascertain whether the stock options were granted to compensate the employee for past, present, or future employment services. Short, 125 Wn.2d at 873.

> This involves a specific fact finding inquiry in every case to evaluate the circumstances surrounding the grant of the employee stock options. Unvested employee stock options granted during marriage for present employment services, assuming the parties were not "living separate and apart" under RCW 26.16.140 when the stock options were granted, are acquired when granted. Unvested employee stock options granted for future employment services are acquired over time as the stock options vest.

Short, 125 Wn.2d at 873. Where the stock options are intended as compensation for future employment services, the time rule is applied only to the first stock option to vest after the separation dates, and all stocks that subsequently vest are the separate property of the employed spouse. Short, 125 Wn.2d at 874.

After characterizing the shares, the trial court has the discretion to distribute the unvested shares in a fair, just, and equitable manner. Baker, 80 Wn.2d 746. The Washington Supreme Court has "consistently held that the trial court is given a wide discretion in making the property division in a divorce action and that this court will not interfere except for a manifest abuse of such discretion." Baker, 80 Wn.2d at 747. We will not disturb findings of fact by a trial court when the findings are supported by substantial evidence. Short, 125 Wn.2d at 874. "When a trial court bases its findings of fact on conflicting evidence and there is substantial evidence to support them, an appellate court will not substitute its judgment even though it might have resolved the

factual dispute differently." Brown v. Superior Underwriters, 30 Wn. App. 303, 305-06, 632 P.2d 887 (1980).

B.

Cross first contends that the court mischaracterized the Fiscal Year 14 Stock Award and Fiscal Year 15 Stock Award as compensation for future work, arguing that they were awards for contemporaneous and past performance.  She argues that she is entitled to dividends from all future vesting for the 2014 and 2015 awards, not just the first vesting.  We disagree.

The trial court's characterizations of the unvested stock was based on the undisputed structure of the stock awards, which would only vest if Aronson remained employed at Microsoft.  The court explicitly found that a portion of the 2014 award and all of the 2015 award had no value when awarded, and were only payable if Aronson remained employed by Microsoft.  Like Short, here, the court characterized the stock options as awards for either present or future employments, based upon the vesting schedule.  As directed by Short, the court applied the time rule to only the first stock option to vest after the separation date, and determined that the stocks that vested after this date were the separate property of the employed spouse.  The circumstances here are almost identical to Short, and the trial court characterized the stock as the Short court did.  Cross's argument that the stock was mischaracterized is unsupported by the evidence.  Because substantial evidence supports the trial court's characterization of the stock awards, we will not substitute our judgment for that of the trial court's.

C.

Cross next argues that the trial court penalized her by deducting the amount of her previous stock award from the amount that Aronson owed her for attorney fees. We disagree.

Cross's argument ignores the trial court's broad discretion to distribute property in a dissolution action. Baker, 80 Wn.2d at 747. The trial court acted within its discretion by reducing her attorney fees by the amount she had already been paid, and is consistent with the court's intent that the stock Aronson transferred to be applied against the attorney fee award. The court acted within its discretion by entering a judgment consistent with the amount Cross would have received if the stock vested by deducting the amount Microsoft would have withheld in taxes. This decision was consistent with the trial court's intent that the amount of stock Cross received would be "less the amount that Microsoft withheld for taxes."

Cross also contends that the date from which interest should run is the date of the final orders in the trial court. Again, the court acted within its discretion when refusing to order that the interest run from the date of the original decree. "Where an appellate court has reversed the trial court judgment and directed that a new money judgment be entered, interest runs from the entry of such new judgment." Fulle v. Boulevard Excavating, Inc., 25 Wn. App. 520, 522, 610 P.2d 387 (1980). Here, the court entered a new judgment for fees on remand, consistent with case law. Additionally, the trial court has the discretion to reduce the rate of interest on deferred payments under a property distribution decree. In re Marriage of Harrington, 85 Wn.

App. 613, 631, 935 P.2d 1357 (1997). Because Cross has not demonstrated that the trial court manifestly abused its discretion when it divided the stock options, we affirm.

III.

Both Cross and Aronson seek attorney fees on appeal. We reject Cross's request, and grant Aronson's request.

"RAP 18.1 requires more than a bald request for attorney fees on appeal. Argument and citation to authority are required under the rule to advise the court of the appropriate grounds for an award of attorney fees and costs." Boyle v. Leech, 7 Wn. App. 2d 535, 542, 436 P.3d 393 (2019) (quoting Stiles v. Kearney, 168 Wn. App. 250, 267, 277, P.3d 9 (2012)). Attorney fees may be awarded only when authorized by a contract provision, a statute, or a recognized ground in equity. King County v. Vinci Constr. Grands Projets/Parsons RCI/Frontier-Kemper, JV, 188 Wn.2d 618, 625, 398 P.3d 1093 (2017).

Fees may be awarded based on the frivolousness of an appeal or based on a party's intransigence. RAP 18.1(a); RAP 18.9(a). An appeal is frivolous, and supports an award of attorney fees, "when there are no debatable issues upon which reasonable minds could differ and when the appeal is so totally devoid of merit that there was no reasonable possibility of reversal." Mahoney v. Shinpoch, 107 Wn.2d 679, 691, 732 P.2d 510 (1987). A party's intransigence in the trial court supports an award of attorney fees on appeal in a dissolution proceeding. Mattson v. Mattson, 95 Wn. App. 592, 606, 976 P.2d 157 (1999). If intransigence in a marriage dissolution proceeding is demonstrated, the financial status of the party seeking attorney fees is irrelevant. Mattson, 95 Wn. App. at 604.

Cross's argument for attorney fees is wholly unsupported by case law, while Aronson provides relevant law to support his argument for an award based on the frivolousness of Cross's appeal and her intransigence. Cross's arguments on appeal are frivolous given the trial court's wide discretion to distribute property in a fair, just, and equitable manner. Baker, 80 Wn.2d at 745-46. At a minimum, Cross's continued challenges to the trial court's discretion in this dissolution proceeding have reached the level of intransigence. Cross continues to challenge and appeal the trial court's decisions because of her belief that the division of property is not fair and just. Here, Cross received half of the stock awards, and she receives maintenance and child support. The trial court followed this court's instruction for the characterization of the unvested stock on remand. Because the court's division of property is fair, just, and equitable, Cross's appeal is without merit. Subject to compliance with RAP 18.1, we award Aronson with attorney fees on appeal.

Affirmed.

_Mann, C.J._

WE CONCUR:

_Brummer, J_            _Leach, J._